J.R. LOTTS & SON WELL DRILLING, APPELLANT, *v.* ROBY, APPELLEE.

(No. 8-87-4—Decided
September 27, 1988.)

*Shirk & Schrader* and *William E. Shirk,* for appellant.
*Charles F. Buck,* for appellee.

GUERNSEY, J. This is an appeal by the plaintiff, J.R. Lotts & Son Well Drilling, from a judgment of the Bellefontaine Municipal Court for the defendant, George Roby, in a money action. Plaintiff alleged in its complaint that it was hired to drill a water well on defendant's real estate at the agreed price of $11 per foot; that it drilled to a depth of four hundred feet at which point, no water having been obtained, the parties agreed that plaintiff should be compensated at $9 per foot drilled, "sans casing." Plaintiff alleged a first claim for recovery of $3,600 on the contract, and a second claim for the recovery of $3,600 on an account attached to the complaint. Defendant answered admitting that he hired plaintiff to drill a water well on his real estate, but denying all of plaintiff's other allegations. Defendant also alleged a counterclaim for $1,455, of which $450 had been paid to plaintiff for an unsuccessful cleaning of an existing well before the four-hundred-foot well was drilled, and of which $1,005 was paid another driller who successfully drilled a seventy-three foot well after the drilling of the four-hundred-foot well was abandoned by plaintiff. Plaintiff joined issue on defendant's counterclaim.

On trial to the court without a jury the court ruled for the defendant on the complaint and for the plaintiff on the counterclaim, finding that the contract was for services illegally performed by the plaintiff in that, contrary to R.C. 3701.28, plaintiff was not registered with the state of Ohio and bonded at the time that it entered into the contract and drilled for water on defendant's property; and in that plaintiff failed to perform the contract by drilling a dry hole to a depth of four hundred feet which did not constitute performance of an agreement to "drill a well," that at best the agreement in this regard is ambiguous and the court

"must interpret that ambiguity against the party seeking to enforce his rights under the contract," and that if "it is Plaintiff's practice or anticipation to be paid for his efforts in drilling for water upon a customer's property, whether his efforts are successful or not, fairness and good business practice would seem to dictate that that fact be spelled out at the inception of the business relationship." It is from this judgment that the plaintiff appeals, assigning error of the trial court (1) in finding that the drilling contract was illegal and unenforceable because plaintiff had failed to register with and furnish a bond to the Ohio Department of Health at the time of drilling the well, and (2) in finding that the plaintiff had failed to perform when drilling the well on defendant's property.

The defendant did not appeal the judgment against him on his counterclaim.

In that a transcript of the evidence adduced at trial was not available, the trial court approved a corrected statement of evidence, setting forth only the following facts generally *relevant* to the plaintiff's appeal:

"Plaintiff operates a well drilling business in Lewistown, Ohio, and testified that he had drilled over 1000 wells in the Logan County area during the past fifteen years.

"Defendant, in September of 1985, hired plaintiff to clean his water well for the sum of $450.00. Plaintiff cleaned out the well and received the agreed sum from defendant; but the cleaning failed to improve the old well. Subsequently, defendant hired plaintiff to drill a well on his property at the rate of $11.00 per foot.

"Plaintiff testified that he did not and could not guarantee to hit water, either in quantity or quality. Defendant admitted that there was no guarantee of water, but defendant testified that it was his understanding that he was to get a water-producing well.

"Plaintiff drilled to the depth of 260 feet on the first day, during which time defendant was present. Plaintiff continued to drill to a depth of 400 feet on the second day, and stopped at this depth when he failed to hit water.

"* * * Defendant has not paid plaintiff his bill of $3,600.00, figured at $9.00 per foot drilled, sans casing.

"When drilling defendant's well, plaintiff was not registered with the Department of Health nor was he bonded as required by Sec. 3701.344 Ohio Revised Code, which became effective June 22, 1984. However, upon learning of this requirement plaintiff did comply with the bonding requirements and registered with the Department of Health by merely paying the $15.00 registration fee.

"Plaintiff testified at trial that he was hired by Defendant to drill a new well, and there was no conversation at all with respect to what would happen if water was not hit."

As here applicable, R.C. 3701.344, amended effective June 22, 1984, prescribes:

"(B) Notwithstanding section 3701.347 of the Revised Code and subject to division (C) of this section, *rules adopted by the public health council regarding private water systems shall provide for the following:*
"* * *

"(3) Private water systems contractors, as a condition of doing business in this state, shall annually register with, and comply with surety bonding requirements of the department of health. No such contractor shall be permitted to register if he fails to comply with all applicable rules adopted by the public health council and the board of health of the city or general health district. The annual registration fee for private water systems contractors shall be fifteen dollars." (Emphasis added.)

As will be observed the quoted statute is merely enabling legislation prescribing the adoption of rules by the public health council to effect the annual registration of private water systems contractors and their surety bonding with the Ohio Department of Health. We have been cited no rules on these subjects, adopted by the public health council after this legislation and prior to the events here in question, so we must conclude that no rules then existed breathing life into the registration and bonding provisions of the statute. That being the case the plaintiff was not thereby limited in his right of doing business as a private water systems contractor, and his contract for drilling a well could not have been illegal, voidable or void, by reason of the registration and bonding provisions of the statute. We conclude that the trial court committed error as assigned in the first assignment of error in so determining.

As to the oral contract between the parties, there is only the following evidence in the statement of evidence particularly relevant to that issue:

1. Defendant hired plaintiff to drill a well on his property at the rate of $11 per foot.

2. Plaintiff testified that he did not and could not guarantee to hit water, either in quantity or quality.

3. Defendant admitted that there was no guarantee of water, but defendant testified that it was his understanding that he was to get a water-producing well.

4. Plaintiff testified that he was hired to drill a new well.

5. Plaintiff testified that there was no conversation at all with respect to what would happen if water was not hit.

Thus, by their respective testimony, we must conclude that the parties were in oral agreement that plaintiff was to drill a new well on defendant's property at $11 per foot, and that there was no express oral guarantee that the well would produce water. Plaintiff testified that there was no conversation at all with respect to what would happen if water was not hit. Defendant does not claim that there was such conversation, but, inconsistently with his admission that water was not guaranteed, claims that he understood that he was to get a water-producing well. The issue then becomes, simply, can a well-drilling contractor recover for the contract price for its labor when it had orally agreed to drill a new water well, but has made no express guarantee that there would be water, and abandons drilling at the four-hundred-foot level when no water is found. Stating the issue even more simply, in the absence of an express guarantee in a water well-drilling contract that water will be found, is there an implied warranty that such will be the case, preventing the drilling contractor from recovering for his services in drilling a dry hole?

The key to the answer is found in our case of *Bierly* v. *Brownell* (Oct. 28, 1985), Allen App. No. 1-84-31, unreported, wherein in reliance on 78 American Jurisprudence 2d (1975) 633, Waters, Section 189, and Annotation (1963), 90 A.L.R. 2d 1346, 1355, and the cases cited in each, we followed the *majority rule* in the states which have decided the issue, that in the absence of a provision in a well-drilling contract specifying the quality of water to be procured, there is no implied warranty on the part of the driller as to the quality of such water. In his opinion, concurred in by the other judges of this court, Judge Cole wrote:

"It is a matter of common knowledge that the ultimate production of water is unknown because of uncertainties in the land which are beyond the control of the driller. * * * The only implied warranty given by the driller is that the service shall be performed in a workmanlike manner, with such skill

as may ordinarily be expected from those who undertake such work. See Annotation (1963), 90 A.L.R. 2d 1346, 1358, and cases cited therein." (Citations omitted.) *Brownell, supra,* at 4-5.

The rule is the same whether the issue involves the quantity of the water rather than its quality. 78 American Jurisprudence 2d (1975) 633-634, Waters, Section 189, reads in its entirety:

"§ 189. Implied warranties.

"It has generally been held that in the absence of a provision in a well-drilling contract guaranteeing the results of the undertaking, there is no implied warranty on the part of the driller as to the quantity of water which will be obtained. It has also generally been held that in the absence of a provision in a well-drilling contract specifying the quality of water to be procured, there is no implied warranty on the part of the driller as to the quality of such water. Indeed, it has been held that there is no implied agreement that any water will be found or produced. However, several courts have declared that there is in a well-drilling contract an implied warranty on the part of the driller that the work shall be done in a workmanlike manner, with such skill as may ordinarily be expected from those who undertake such work."

Based on these authorities, we conclude that the trial court also committed error prejudicial to the plaintiff, appellant herein, as asserted in its second assignment of error.

For the prejudicial errors of the trial court the judgment of the trial court must be reversed and, this court, rendering the judgment that the trial court should have rendered, renders judgment in favor of plaintiff and against the defendant in the amount of $3,600, being the amount prayed for in the complaint, together with interest thereon as provided by law.

*Judgment reversed and final judgment rendered.*

MILLER, P.J., and COLE, J., concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.